# Lawyers Professional Liability Insurance Policy



ZURICH

# Lawyers Professional Liability Insurance Policy


ZURICH

Declarations

This is a Claims Made and Reported Policy. Please review the Policy carefully.

The policy is limited to liability for only those Claims that are first made against the Insured and reported to the Company during the Policy Period.

Policy Number:   LPL 4907012-1                    Renewal of Number:   LPL 4907012

Item 1.  Insured by the stock company below and hereinafter called the Company

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY

Item 2.  Named Insured and Mailing Address:            Producer:

BAPTISTE & WILDER, P.C.                              BERTHOLON-ROWLAND, CORP.
                                                     100 BROADWAY
1150 CONNECTICUT AVE, NW                             New York/NY                10005
SUITE 500
WASHINGTON          DISTRICT OF COLUMBIA
DC 20036

Item 3.  Policy Period:  From: 05-Nov-2003   To:  05-Nov-2004
         12:01 am Standard Time at the address of the NAMED INSURED shown above.

Item 4.  Limit of Liability
         Each Claim        $  4,000,000
         Aggregate         $  4,000,000

Item 5.  Deductible        $  10,000

Item 6.  Premium           $  23,629.00

Item 7.  Forms Attached at Issuance
         SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS

> Telephone Reporting for All Claims
> Call to Report a Claim
> **1-800-987-3373**

By acceptance of this policy the Insured agrees that the statements in the declarations and the application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

Countersigned at:

New York/NY                                          11/04/03
                                                     Issue Date
Signed by: _____                     11/5/03
           Authorized Representative                 Date

U-PL-D-871-A
Page

SCHEDULE OF FORMS AND ENDORSEMENTS:

Policy Number: LPL 4907012-1
Policy Period From:  11/05/03                                   To:  11/05/04

Forms Attached at Issuance:

UPL 871A POLICY                           UPL 880A CLAIM EXPENSES OUTSIDE
UPL 857A PRIOR ACTS EXCLUSION             UPL 915A DC CHANGES ENDORSEMENT

U-PL-D-871-A CW (5/99)
Page 2 of 2

PAGE 3/8 * RCVD AT 9/27/2005 10:43:57 AM [Eastern Daylight Time] * SVR:ATLRF01/0 * DNIS:8589 * CSID: * DURATION (mm-ss):02-20

Endorsement #

## Deletion of Lawyers Endorsement


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| LPL 4907012-1 | 11/05/03 | 11/05/04 | 2/29/04 | 53-204 | | |

Named Insured and Mailing Address:        Producer:

BAPTISTE & WILDER, P.C.

1150 CONNECTICUT AVE, NW
SUITE 500
WASHINGTON        DISTRICT OF COLUMBIA
DC        20036

BERTHOLON-ROWLAND, CORP.
100 BROADWAY
New York/NY        10005

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under:

**Lawyers Professional Liability Policy**

In consideration of the premium referenced above, it is agreed that this policy is amended as indicated. All other terms and conditions of this policy remain unchanged.

The following lawyer(s) are deleted from this policy:

PATRICK J SZYMANSKI

Signed by: _____     Date: 5/13/04
Authorized Representative

U-PL-1115-A CW (4/0
Page 1

Endorsement #

# Prior Acts Exclusion Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| LPL 4907012-1 | 11/05/03 | 11/05/04 | 11/05/03 | 53-204 | | |

Named Insured and Mailing Address:

BAPTISTE & WILDER, P.C.

1150 CONNECTICUT AVE, NW
SUITE 500
WASHINGTON        DISTRICT OF COLUMBIA
DC 20036

Producer:

BERTHOLON-ROWLAND, CORP.
100 BROADWAY
New York/NY 10005

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under:

Lawyers Professional Liability Policy

In consideration of the premium charged, it is agreed that this policy is amended as indicated. All other terms and conditions of this policy remain unchanged.

This policy specifically excludes coverage for Damages and Claim Expenses resulting from Claims brought against any of the Insureds listed below based on an act or omission that occurred or is alleged to have occurred prior to the dates listed for each of the Insureds.

| INSURED | | PRIOR ACTS EXCLUSION DATE |
|---|---|---|
| KATHERINE | MCDONOUGH | 6/11/01 |
| WILLIAM | WILDER | 11/01/97 |
| JOSHUA | MCINERNEY | 10/04/01 |

Signed by: _____    11/5/03
Authorized Representative                    Date

U-PL-887-A CW (5/99)
Page 1 of 1

Endorsement #

# Claim Expenses Outside Of Limit Of Liability Endorsement

**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| LPL 4907012-1 | 11/05/03 | 11/05/04 | 11/05/03 | 53-204 | | |

Named Insured and Mailing Address:

BAPTISTE & WILDER, P.C.

1150 CONNECTICUT AVE, NW
SUITE 500
WASHINGTON     DISTRICT OF COLUMBIA
DC 20036

Producer:

BERTHOLON-ROWLAND, CORP.
100 BROADWAY
New York/NY 10005

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under:

Lawyers Professional Liability Policy

In consideration of the premium charged, it is agreed that this policy is amended as indicated. All other terms and conditions of this policy remain unchanged.

I.  Part II -- Limit of Liability and Deductible, Section A -- Limit of Liability is deleted in its entirety and replaced by the following:

   A. **Limit of Liability**

   1. Each Claim: Claim Expenses are in addition to the limit of liability; however, the liability of the Company for Damages for each Claim covered by this policy shall not exceed the amount shown in the Declarations for Each Claim.

   2. Aggregate: The liability of the Company for all Damages for all Claims covered by this policy shall not exceed the amount shown in the Declarations as Aggregate.

   If the limit of liability is exhausted by any settlement or judgment of any Claim, the Company's obligations under this policy shall be terminated and the Company shall have the right to withdraw from the further investigation or defense thereof by tendering control of such investigation or defense to the Named Insured, and the Named Insured agrees, as a condition to the issuance of this policy, to accept such tender.

II. Part VI -- Definitions, Section B -- Claim Expenses is deleted in its entirety and replaced by the following:

   B. **CLAIM EXPENSES** means:

   1. fees, costs and expenses charged by attorneys retained or approved by the Company;

   2. fees, costs and expenses incurred in defending a Claim for Personal Injury brought against an Insured;

   3. reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the Company to apply for or furnish such bond.

   Claim Expenses shall not include:

   1. fees, costs or expenses of employees or officers of the Company;

   2. salaries, loss of earnings, reimbursement for the Insured's time or attendance required in any investigation, defense or appearance;

U-PL-880-A CW (5/99)
Page 1 of 2

3. other remuneration by or to any Insured.

The determination by the Company as to the reasonableness of Claim Expenses shall be conclusive on the Named Insured.

Signed by: _____    _____11/5/03_____
Authorized Representative            Date

U-PL-880-A CW (5/99)
Page 2 of 2

## District of Columbia Changes


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| LPL 4907012-1 | 11/05/03 | 11/05/04 | 11/05/03 | 53-204 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
Lawyers Professional Liability Insurance Policy

I. SECTION V. CONDITIONS, paragraph F. CANCELLATIONS is deleted in its entirety and replaced by the following:

   F. CANCELLATION AND NONRENEWAL

   1. CANCELLATION

      a. This policy may be canceled by the Named Insured by surrender of the policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the Named Insured, the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

      b. The Company may cancel this policy by mailing or delivering to the Named Insured written notice of cancellation at least thirty (30) days before the effective date of cancellation. At least five (5) days before sending notice to the Named Insured the Company will notify the agent or broker, if any, who wrote the policy.

      c. If this policy has been in effect for thirty (30) days or fewer and is not a renewal of a policy the Company issued, the Company may cancel this policy for any reason.

      d. If this policy has been in effect for greater than thirty (30) days, or if this policy is a renewal of a policy the Company issued, the Company may cancel this policy only for one or more of the following reasons:

         (1) The Insured has refused or failed to pay a premium due under the terms of the policy;

         (2) The Insured has made a material and willful misstatement or omission of fact to the Company or its employees, agent or brokers in connection with any application to or Claim against the Company;

         (3) The property or other interest of the Insured shall have been transferred to a person other than the Insured or beneficiary, unless the transfer is permitted under the terms of the policy; or

         (4) Unless property, interest or use of the property or interest has materially changed with respect to its insurability.

      e. If the policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

   2. NONRENEWAL

      The Company may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the Named Insured at the last mailing address known to the Company. The Company will mail or deliver the notice at least thirty (30) days before the expiration of the policy. At least five (5) days before sending notice to the Named Insured, the Company will notify the agent or broker, if any, who wrote the policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

U-PL-915-A DC (6/99)
Page 1 of 1

# Lawyers Professional Liability Insurance Policy


ZURICH

THIS IS A CLAIMS MADE AND REPORTED POLICY. CLAIMS MUST BE FIRST MADE AND REPORTED TO THE COMPANY DURING THE **POLICY PERIOD** OR ANY EXTENDED REPORTING PERIOD. THE PAYMENT OF **CLAIM EXPENSES** REDUCES THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.

In consideration of the premium charged, the undertaking of the **Named Insured** to pay the deductible, and in reliance upon the statements in the application and subject to the limit of liability shown in the Declarations as well as the Exclusions, Conditions and other terms of this policy, the **Company** agrees with the **Named Insured** as follows:

## I. INSURING AGREEMENT

### A. COVERAGE

The **Company** will pay on behalf of an **Insured**, subject to the limit of liability, all amounts in excess of the deductible shown in the Declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both made and reported to the **Company** during the **Policy Period** or any extended reporting period based on an act or omission in the **Insured's** rendering or failing to render **Legal Services** for others. It is a condition precedent to coverage under this policy that the act or omission occurred:

1. during the **Policy Period**; or

2. prior to the **Policy Period**, provided that all of the following four conditions are met:

   a) the **Insured** did not notify any prior insurer of such act or omission or **Related Act or Omission**; and

   b) prior to the inception date of the first policy issued by the **Company** if continuously renewed, no Insured had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

   c) prior to the date any **Insured** first became a member or employee of the **Named Insured**, such **Insured** had no basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

   d) there is no policy that provides insurance to the **Insured** for such liability or **Claim**.

### B. DEFENSE AND INVESTIGATION

The **Company** shall have the right and duty to defend any **Claim** based on an act or omission in the **Insured's** rendering or failing to render Legal Services for others, seeking **Damages** that are covered by this policy and/or any **Claim** alleging **Personal Injury** made against an **Insured** even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Company** shall have the right to select defense counsel for the investigation, defense or settlement of the **Claim** and the **Company** shall pay all reasonable **Claim Expenses** arising from the **Claim**.

The **Company** shall have the right to conduct such investigation or negotiation of any **Claim** as it deems expedient. The **Company** shall not be obligated to pay any **Damages** or **Claim Expenses**, or to defend or continue to defend any **Claim** after the **Company's** limit of liability has been exhausted by payment or by deposit in a court having jurisdiction of sums reflecting the remaining applicable limit of liability of the policy.

### C. CONSENT TO SETTLE

The **Company** shall not settle any **Claim** without the consent of the **Insured**, which consent shall not be unreasonably withheld. If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability under this policy shall be reduced to the amount for which the **Claim** could have been settled plus all **Claim Expenses** incurred up to the time the Company made its recommendation. This amount shall not exceed the remainder of the limit of liability.

If the **Insured** refuses to settle, once the total **Claim Expenses** equal the amount for which the **Claim** could have been settled plus all **Claim Expenses** incurred up to the time the Company made its recommendation, the **Company** shall have the right

1

to withdraw from the further investigation and defense thereof by tendering control of such investigation or defense to the Insured and the Insured agrees, as a condition of the issuance of this policy, to accept such tender.

## II. LIMIT OF LIABILITY AND DEDUCTIBLE

### A. LIMIT OF LIABILITY

1. Each Claim: Claim Expenses are included in the limit of liability; therefore, the liability of the **Company** for Damages and **Claim Expenses** for each **Claim** covered by this policy shall not exceed, subject to the deductible, the amount shown in the Declarations for Each **Claim**.

2. Aggregate: The liability of the **Company** for the combined total of all Damages and **Claim Expenses** for all **Claims** covered by this policy shall not exceed, subject to the Each **Claim** paragraph above, the amount shown in the Declarations as Aggregate.

If the limit of liability is exhausted prior to settlement or judgment of any pending **Claim**, the **Company's** obligations under this policy shall be terminated and the **Company** shall have the right to withdraw from the further investigation or defense of any pending **claim** by tendering control of such investigation or defense to the **Named Insured**, and the **Named Insured** agrees, as a condition to the issuance of this policy, to accept such tender.

### B. DEDUCTIBLE

The deductible amount shown in the Declarations shall apply to all **Damages** and **Claim Expenses** for each and every **Claim**. The deductible is included within the limit of liability. The deductible shall be applied first to **Claim Expenses** with any remainder applied to **Damages**. The **Company's** obligation to pay is in excess of the deductible. The **Named Insured** shall pay the deductible within thirty (30) days of demand by the **Company**.

### C. MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS

The inclusion of more than one Insured in any **Claim**, or the making of Claims by more than one person or entity shall not increase the **Company's** limit of liability or the deductible. Two or more Claims arising out of a single act or omission, or Related Acts or Omissions shall be treated as a single **Claim**. All such Claims, whenever made, shall be considered first made during the Policy Period in which the earliest **Claim** was first reported.

### D. MULTIPLE POLICIES

If this policy and any other policy issued by Zurich US including any extended reporting period coverage afforded by such policy or policies, provides coverage to the same **Claim** against the Insured, the maximum limit of liability under all the policies shall not exceed the highest remaining Each **Claim** limit of liability under any one policy.

## III. EXCLUSIONS

This policy shall not apply to any **Claim** based upon or arising out of, in whole or in part:

A. any intentional, criminal, fraudulent, malicious or dishonest act or omission by an **Insured**; except that this exclusion shall not apply in the absence of a final adjudication or admission by an **Insured** that the act or omission was intentional, criminal, fraudulent, malicious or dishonest;

B. any act whatsoever of an **Insured** in connection with a trust or estate when an **Insured** is a beneficiary or distributee of the trust or estate;

C. any act or omission by any **Insured** in an action brought by or on behalf of any other **Insured**;

D. the **Insured's** capacity or status as:

   1. an officer, director, partner, trustee, shareholder, manager or employee of a business enterprise, charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust;

   2. a public official, or an employee of a governmental body, subdivision, or agency unless the **Insured** is privately retained solely to render **Legal Services** to the governmental body, subdivision or agency and the remuneration for the **Legal Services** is paid directly or indirectly to the **Named Insured**;

E. the alleged acts or omissions by any **Insured**, with or without compensation, for any business enterprise, whether for profit or not-for profit, in which any **Insured** has a **Controlling Interest**;

F. any alleged violations of the Employment Retirement Income Security Act of 1974, its amendments, or any regulations or orders promulgated pursuant thereto;

G. any liability assumed by an **Insured** under any oral or written contract or agreement, unless such liability would have attached to the **Insured** by law in the absence of such contract or agreement;

H. the notarized certification or acknowledgment of signature without the physical appearance before such notary public of the person who is or claims to be the person signing said instrument;

I. any injury or damage which would not have occurred in whole or in part but for the actual or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

J. any **Claim Expenses** or **Damages** arising from a request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**, or a **Claim** brought by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

## IV. EXTENDED REPORTING PERIOD OPTIONS

### A. EXTENDED REPORTING PERIOD

In the event of cancellation or non-renewal of this policy by either the **Named Insured** or the **Company**, the **Named Insured** has the right, upon payment to the **Company** or any of its authorized agents of an additional premium as set forth below within thirty (30) days of the cancellation or non-renewal, to extend the period for reporting **Claims** first made against an **Insured** after the termination of the **Policy Period** for any actual or alleged act or omission occurring prior to the termination of the **Policy Period** and otherwise covered by this policy.

Premium for the extended reporting period endorsement shall be computed according to the following percentages based on the annual premium amount shown in the Declarations of this policy:

  a one year extended reporting period for 100% of the expiring premium;

  a two year extended reporting period for 150% of the expiring premium;

  a three year extended reporting period for 185% of the expiring premium;

  an unlimited extended reporting period for 225% of the expiring premium.

### B. NONPRACTICING EXTENDED REPORTING PERIOD

If an **Insured**, as defined in Part VI -- Definitions, Section G -- Insured, Subsection 2, ceases the private practice of law during the **Policy Period**, and such **Insured** has been continuously insured by the **Company** for at least three (3) consecutive years, then such **Insured** has the right, upon payment to the **Company** or any of its authorized agents of an additional premium within thirty (30) days of such retirement or the ceasing of the private practice of law, to extend the period for reporting **Claims** first made against an **Insured** after the termination of the **Policy Period** for any actual or alleged act or omission occurring prior to the termination of the **Policy Period** and otherwise covered by this policy.

Premium for the nonpracticing extended reporting period endorsement shall be computed according to the following percentages based on the annual premium amount shown in the Declarations of this policy:

  a three year non-practicing extended reporting period for no charge;

  a six year non-practicing extended reporting period for 100% of the expiring premium

  an unlimited non-practicing extended reporting period for 150% of the expiring premium.

Any applicable premium will be waived for any **Insured** who is leaving the private practice of law to become either a state or federal judge.

### C. DEATH OR DISABILITY OF AN INSURED EXTENDED REPORTING PERIOD

If an **Insured**, as defined in Part VI -- Definitions, Section G -- Insured, Subsection 2, dies during the **Policy Period**, such **Insured** shall be provided with a death extended reporting period commencing after the termination of the **Policy Period** at no additional premium until the executor or administrator of the estate is discharged, provided always that the death did not result from an intentionally self-inflicted injury, suicide or alcohol or drug abuse, and provided always that written notification and written proof of death of the **Insured** is provided within sixty (60) days of the date of death or prior to the end of the **Policy Period**, whichever is earlier.

If an **Insured** becomes **Totally and Permanently Disabled** during the **Policy Period**, such Insured shall be provided with a disability extended reporting period commencing after the termination of the **Policy Period** at no additional premium until the

Insured is no longer **Totally and Permanently Disabled**. A condition to the extended reporting period for total and permanent disability shall be that the **Insured** has had continuous coverage with the **Company** for at least three (3) consecutive prior full years, the **Insured** or his legal guardian provides written notice of the disability to the **Company** within sixty (60) days or prior to the termination of the **Policy Period**, whichever is earlier, and the **Insured** or the **Insured's** legal guardian provides a physician's written certification of the disability, including the date it began.

D. ALL REPORTING PERIOD OPTIONS

1. The right to any of the extended reporting period options is not available to any **Insured** where cancellation or nonrenewal by the **Company** is due to nonpayment of premium or other money due to the **Company** or if the **Insured** has had his or her license to practice law suspended or revoked.

2. The limit of liability available for any extended reporting period option is part of, and not in addition to, the limit of liability shown on the Declarations of the expiring policy. The deductible as shown on the Declarations will apply separately to each and every **Claim** brought under any extended reporting period option. The deductible will be waived in the event of the death of the **Insured** or in the event the **Insured** becomes **Totally and Permanently Disabled**.

3. None of the extended reporting period options are cancelable. None of the extended reporting options are renewable. The additional premium for the extended reporting period endorsement is fully earned at the inception of the extended reporting period.

V. CONDITIONS

A. POLICY TERRITORY

This insurance is provided worldwide.

B. NOTICE TO THE COMPANY

1. Notice to the **Company** shall be made at such location as is indicated on the Declarations.

2. **NOTICE OF AN ACTUAL CLAIM**

The **Insured**, as a condition precedent to this policy, shall immediately provide Notice to the **Company** of any **Claim** made against an **Insured**. In the event suit is brought against the **Insured**, the **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process received directly or by any **Insured's** representative.

3. **NOTICE OF A POTENTIAL CLAIM**

The **Insured**, as a condition precedent to this policy, shall immediately provide Notice to the **Company** if any **Insured** has any basis to believe that any **Insured** has breached a professional duty or to foresee that any such act or omission might reasonably be expected to be the basis of a **Claim**. If during the **Policy Period** the **Insured** shall become aware of any act or omission that may reasonably be expected to be the basis of a **Claim** against an **Insured** and gives **Notice** to the **Company** of such act or omission and the reasons for anticipating a **Claim**, then any such **Claim** that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made and reported at the time such Notice was given.

4. FRAUDULENT CLAIM

If any **Insured** shall commit fraud in proffering any **Claim** with regard to amount or otherwise, this policy shall become void ab initio as to such **Insured**.

C. ASSISTANCE AND COOPERATION OF THE INSURED

All **Insureds** shall cooperate with the **Company**, including providing all information requested by the **Company** regarding any **Claim**, and cooperating fully with the **Company** in the defense, investigation and settlement of any **Claim**. Upon the **Company's** request, all **Insureds** shall submit to examination by a representative of the **Company**, under oath if required. In addition, upon the **Company's** request, all **Insureds** shall attend hearings, depositions and trials, and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits, all without charge to the **Company**.

The **Insured** shall follow the **Company's** direction regarding whether to accept or reject a demand for arbitration of any **Claim**, and shall not voluntarily agree to arbitrate a **Claim** without the **Company's** written consent. No **Insured** shall, except at the **Insured's** own cost, make any payment, make any admission, admit liability, waive any rights, settle any **Claim**, assume any obligation or incur any expense without the prior written consent of the **Company**.

D. PROTECTION FOR INNOCENT INSUREDS

Whenever coverage under this policy would be excluded, suspended or lost because of Section III -- Exclusions, subsection A, the **Company** agrees that such insurance as would otherwise be afforded under this policy shall be applicable with respect to any **Insured** who did not personally acquiesce in or remain passive after having personal knowledge of such conduct.

Whenever coverage under this policy would be excluded, suspended or lost because of Section V -- Conditions, subsection B.2 and B.4, the **Company** agrees that such insurance as would otherwise be afforded under this policy, shall be applicable to any **Insured** who did not personally acquiesce in or remain passive after having personal knowledge of the **Claim** under Section V -- Conditions, subsection B.2 or fraud under Section V -- Conditions, subsection B.4.

The **Company's** obligation to pay shall begin once the full extent of the assets of the responsible **Insured** have been exhausted and once the deductible as shown in the Declarations of the policy has been satisfied.

E. SUBROGATION

The **Company** shall be subrogated to all **Insureds'** rights of recovery against any person or organization. All **Insureds** shall assist the **Company** in effecting any rights of indemnity, contribution and apportionment available to any **Insured**, including the execution of such documents as are necessary to enable the **Company** to pursue claims in the **Insureds'** names, and shall provide all other assistance and cooperation which the **Company** may reasonably require. All **Insureds** shall cooperate with the **Company** and do nothing to jeopardize, prejudice or terminate in any way such rights.

The **Company** shall not exercise any such rights against any **Insured** except as provided herein. Notwithstanding the foregoing, however, the **Company** reserves the right to exercise any rights of subrogation against any **Insured** with respect to any **Claim** brought about or contributed to by the intentional, criminal, fraudulent, malicious or dishonest act or omission of such **Insured**.

F. CANCELLATIONS

This policy may be canceled by the **Named Insured** by surrender of the policy to the **Company** or by mailing written notice to the **Company** stating when such cancellation shall take effect. If canceled by the **Named Insured**, the **Company** shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the **Company**.

This policy may be canceled by the **Company** by written notice mailed to the Named **Insured** at the address shown in the Declarations. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed unless the policy is canceled because the **Named Insured** has failed to pay a premium or deductible when due. In that event, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed.

If the policy is canceled by the **Company**, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

This policy shall terminate upon expiration of the **Policy Period** shown in the Declarations.

G. OTHER INSURANCE

Subject to I – Insuring Agreement, A – Coverage and II – Limit of Liability and Deductible, A– Limit of Liability, this insurance will apply only as excess insurance over any other valid and collectible insurance. This policy is written as specific excess of coverage available under any extended reporting period.

H. ASSIGNMENT

Neither this policy nor any **Insured's** interest under this policy may be assigned.

I. ACTION AGAINST THE COMPANY

No action shall lie against the **Company** unless, as a condition precedent thereto, all **Insureds** have fully complied with all the terms of this policy and not until the amount of all **Insured's** obligations to pay have been fully and finally determined either by judgment against all **Insureds** or by written agreement of the Named **Insured**, the Claimant and the **Company**.

Nothing contained in this policy shall give any person or organization any right to join the **Company** as a co-defendant in any action against any **Insured**.

5

J. APPLICATION

By acceptance of this policy, all **Insureds** reaffirm as of the effective date of this policy that:

1. the statements in the application(s) and any attachment(s) attached hereto and made a part hereof, and all information communicated by the **Insureds** to the **Company**, either oral or written or electronically submitted, are true and accurate, are specifically incorporated herein, and are all **Insureds**' agreements, personal representations and warranties; and
2. all such communicated information shall be deemed material to the **Company's** issuance of this policy; and
3. this policy is issued in reliance upon the truth and accuracy of such representations; and
4. this policy embodies all agreements existing between the **Insureds** and the **Company**, or any of its agents, relating to this insurance; and
5. if any representation is false or misleading, this policy shall be void *ab initio*.

K. MATERIAL CHANGE

Any **Material Change** during the **Policy Period** shall be reported within 30 days by the **Named Insured** to the **Company**.

L. ENTIRE AGREEMENT

No change or modification of this policy shall be effective except when made by a written endorsement to this policy signed by an authorized representative of the **Company**. No representations by any person shall have any force or effect except as included within this written agreement.

M. WAIVER

The **Company's** failure to insist on strict compliance with any terms, provisions or conditions to coverage of this policy or the failure to exercise any right or privilege shall not operate or be construed as a waiver thereof or of any subsequent breach thereof or a waiver of any other terms, provisions, conditions, privileges or rights.

N. DEFINED TERMS

Terms used in the policy in bold faced type are defined herein.

VI. DEFINITIONS

A. CLAIM means a demand for money or **Legal Services**.

B. CLAIM EXPENSES means:

1. fees, costs and expenses charged by attorneys retained or approved by the **Company**;
2. fees, costs and expenses charged by attorneys retained or approved by the **Company** for a **Claim** for **Personal Injury** brought against an **Insured**;
3. reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **Company** to apply for or furnish such bond.

**Claim Expenses** shall not include:

1. salaries, loss of earnings, reimbursement for the **Insured's** time or attendance required in any investigation, defense or appearance;
2. other remuneration by or to any **Insured**.

The limit of liability shall first be applied to **Claim Expenses** with the remainder, if any, being the amount available to pay as **Damages**. The determination by the **Company** as to the reasonableness of **Claim Expenses** shall be conclusive on all **Insureds**.

C. COMPANY means the entity listed in Item 1 of the Declarations.

D. CONTROLLING INTEREST means the right of an **Insured** or a member of an **Insured's Immediate Family**, directly or indirectly, to:

1. own 10% or more of an interest in an entity; or
2. vote 10% or more of the issued and outstanding voting stock in an incorporated entity; or
3. elect 10% or more of the directors of an incorporated entity; or

    4. receive 10% or more of the profits of an unincorporated entity; or

    5. act as general partner of a limited partnership, managing general partner of a general partnership, or comparable position in any other business enterprise.

E. **DAMAGES** means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with the assistance and approval of the **Company**. **Damages** do not include:

    1. compensation for bodily injury to, sickness, disease, death of any person, emotional distress or other emotional judgments or awards;

    2. compensation for injury to or destruction of tangible property or loss of use or value thereof;

    3. personal profit or advantage to which the **Insured** was not legally entitled;

    4. criminal or civil fines, penalties (statutory or otherwise), fees or sanctions;

    5. punitive, exemplary or multiple damages;

    6. matters deemed uninsurable;

    7. legal fees, costs and expenses paid to or incurred or charged by the **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, setoff or otherwise, and injuries that are a consequence of any of the foregoing; or

    8. any form of equitable or non-monetary relief.

F. **IMMEDIATE FAMILY** means:

    1. the **Insured**;

    2. the **Insured's** spouse;

    3. the **Insured's** parent(s), adoptive parent(s) or step-parent(s);

    4. the **Insured's** sibling(s) or step-sibling(s);

    5. the **Insured's** child(ren), adoptive child(ren) or step-child(ren).

G. **INSURED** means:

    1. **Named Insured**, which is the entity shown in Item 2 of the Declarations;

    2. any lawyer or professional corporation listed in the application on the day the **Policy Period** incepts until such time as the lawyer or professional corporation ceases to be a member of the **Named Insured** subject to section 4 below;

    3. any lawyer or professional corporation who becomes a partner, officer, director, stockholder or shareholder or employee of the **Named Insured** during the **Policy Period** until such time as the lawyer or professional corporation ceases to be a member of the **Named Insured** subject to section 4 below;

    4. any lawyer or professional corporation who is a former partner, officer, director, stockholder or shareholder or employee of the **Named Insured** or Predecessor Firm, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured** or Predecessor Firm;

    5. any person or entity who is designated by the **Named Insured** as counsel or of counsel in the application, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured**;

    6. any other person who is employed or retained by the **Named Insured** as a legal secretary, paralegal, contract attorney or other legal office staff member, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured** and also only within the scope of such employment or retention agreement; and;

    7. the estate, heirs, executors, administrators, assigns and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this policy.

H. **LEGAL SERVICES** means those services performed by an **Insured** as a licensed lawyer in good standing, arbitrator, mediator, title agent, notary public, administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity but only where the act or omission was in the rendition of services ordinarily performed as a lawyer. **Legal Services** shall not be extended to include services rendered as a real estate agent or broker or as an insurance agent or broker.

I. **MATERIAL CHANGE** means:
   1. an increase or decrease of lawyers or professional corporations resulting in a change to the **Named Insured** of greater than 50% of the total of all individuals who are partners, officers, directors, stockholders or shareholders of the **Named Insured** who perform **Legal Services** on behalf of the **Named Insured**; or
   2. the acquisition of the **Named Insured** by another entity, or the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity or the acquisition of all or substantially all of the assets of the **Named Insured** by another entity.

J. **NOTICE** means the **Insured's** providing the following information to the **Company**, either in writing or as otherwise authorized by the **Company**:
   1. the description of the alleged act or omission; and
   2. the identities of the claimants or potential claimants; and
   3. the identities of the responsible **Insured(s)**; and
   4. the date and circumstances by which the **Insured(s)** first became aware of the act or omission.

K. **PERSONAL INJURY** means an allegation of libel, slander, violation of a right of privacy, false arrest, detention, imprisonment, wrongful entry, eviction, malicious prosecution or abuse of process arising from the rendering of **Legal Services** for others unless deemed uninsurable under the law pursuant to which this policy shall be construed.

L. **POLICY PERIOD** means the period of time between the effective date as shown on the Declarations of this policy and the date of expiration or cancellation of the policy.

M. **POLLUTANTS** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

N. **PREDECESSOR FIRM** means any entity engaged in **Legal Services** to whose financial assets and liabilities the **Named Insured** is the majority successor in interest.

O. **RELATED ACT OR OMISSION** means an act or omission that forms the basis for two or more claims, where a series of continuous, repeated, interrelated or causally connected acts or omissions give rise to one or more claims, whether committed by one or more **Insured(s)**.

P. **TOTALLY AND PERMANENTLY DISABLED** means the Insured is wholly prevented from rendering **Legal Services**, provided that the disability has continued for at least six (6) months, is reasonably expected to be continuous and permanent and the disability did not result from intentionally self-inflicted injury, attempted suicide, alcohol or drug abuse.

_[signature]_  
President

_[signature: Susan K. Harold]_  
Secretary

8

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that this policy does not apply:

A. Under any liability coverage, to **Personal Injury** or **Property Damage**;
   1. With respect to which an **Insured** under the policy is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or
   2. Resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

B. Under any medical payments coverage, to expenses incurred with respect to **Personal Injury** resulting from the **Hazardous Properties** of **Nuclear Material** and arising out of the operation of a **Nuclear Facility** by any person or organization.

C. Under any liability coverage, to **Personal Injury** or **Property Damage** resulting from the **Hazardous Properties** of **Nuclear Material**, if:
   1. The **Nuclear Material** (i) is at any **Nuclear Facility** owned by, or operated by or on behalf of, an **Insured** or (ii) has been discharged or dispersed therefrom;
   2. The **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or
   3. The **Personal Injury** or **Property Damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **Property Damage** to such a **Nuclear Facility** and any property thereat.

D. As used in this endorsement:
   1. **Hazardous Properties** include radioactive, toxic or explosive properties;
   2. **Nuclear Material, Special Nuclear Material,** and **By-product Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   3. **Personal Injury** means any physical or mental injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
   4. **Spent Fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**;
   5. **Waste** means any waste material (a) containing **By-product Material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content, and (b) resulting from the operation by any person or organization of any **Nuclear Facility** included under paragraphs (1) and (2) of the definition of **Nuclear Facility**.
   6. **Nuclear Facility** means:
      a) Any **Nuclear Reactor**;
      b) Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing **Spent Fuel**, or (iii) handling, processing or packaging **Waste**;
      c) Any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
      d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**;
      e) and includes the site on which any of the foregoing is located, all operations conducted on such site and premises used for such operations;
   7. **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   8. **Property Damage** includes all forms of radioactive contamination of property.

This page includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission,

Copyright, ISO Commercial Risk Services, Inc., 1998